**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Christopher Smith, | ) | No. CV 17-494-TUC-LAB |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Commissioner of Social Security Administration, | ) ) ) | |
| Defendant. | ) ) ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, p. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 14)

The Commissioner's decision is affirmed.


PROCEDURAL HISTORY

In January of 2014, Smith filed an application for disability insurance benefits pursuant to Title II of the Social Security Act. (Tr. 157) He alleged disability beginning on November 1, 2013, due to cervical dystonia [involuntary muscle contractions], acid reflux, anxiety, depression, "explosive disorder," sleep problems, and uncontrolled movements of head and hands. (Tr. 157, 214)

His application was denied initially and upon reconsideration. (Tr. 93-96); (Tr. 102-104) Smith requested review and appeared with counsel at a hearing before Administrative Law

Judge (ALJ) MaryAnn Lunderman on May 3, 2016. (Tr. 44) In her decision, dated July 15, 2016, the ALJ found Smith was not disabled because, considering his age, education, work experience, and residual functional capacity, he could work in assembly, DOT # 725.684-018. (Tr. 21-37)

Smith appealed, but on September 22, 2017, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-4) Smith subsequently filed this action seeking review of that final decision. (Doc. 1)

Claimant's Work History and Medical History

Smith was 44 years old at the hearing before the ALJ. (Tr. 48) He attended technical school while in the Air Force and worked as a medical technologist. (Tr. 49-50) He also earned a certificate from the Tucson College of Business. (Tr. 49)

For over 16 years, Smith worked as a phlebotomist. (Tr. 50) One day at work, he "was very mad" and was "asked to leave the premises by security." (Tr. 50); (Tr. 318) He voluntarily quit rather than being fired. (Tr. 51) This incident appears to mark his alleged disability onset date. (Tr. 318); (Tr. 157, 214)

Smith testified at the hearing that he cannot work now because his "knees are gone" and he has "fibromyalgia." (Tr. 51) He has insomnia, vomits frequently, and urinates frequently. (Tr. 52) He has tremors in his neck from cervical dystonia, which was aggravated by a traffic accident. (Tr. 52); (Tr. 316); (Tr. 687) He has pain in his right hand that causes him difficulty writing. (Tr. 57-58)

Smith also has mental impairments. He suffers from depression, anxiety, and paranoid delusions. (Tr. 555) In June of 2014, he was given emergency mental health treatment when he stated that he had a gun and wanted to kill himself. (Tr. 55); (Tr. 488)

When asked about his functional limitations, Smith testified that he can only lift 10 pounds, sit for 15 to 30 minutes, walk a block and a half, and stand for 30 minutes. (Tr. 53-54) He can clean his bathroom and do his own laundry. (Tr. 54) His mother does all of the cooking. (Tr. 54)

1       Ruth Van Vleet testified as a vocational expert. (Tr. 58) She explained that Smith's work as a phlebotomist was light, semi-skilled work. (Tr. 59) She testified that a person "limited to simple tasks with no more than occasional, brief, intermittent, business-related contact with the public" could not perform that job. (Tr. 59) (punctuation modified) Van Vleet further testified that a person with Smith's age, education, and work experience would be disabled if he were limited to standing or walking 2 hours per day; sitting 30 minutes at one time; lifting up to 10 pounds; and "frequent" reaching, feeling, fingering, handling, grasping, kneeling, and crouching. (Tr. 60) But if that person could sit for at least 1 hour at a time and could use his upper extremities on a "continuous" basis, he could work in assembly, DOT # 725.684-018. (Tr. 61)

*Mental Impairment*

      In May of 2014, a psychologist identified as G. R. L., Ph.D., reviewed the medical record for the disability determination service and offered an opinion of Smith's mental impairment. (Tr. 69-73) G. R. L. diagnosed Smith with affective disorder. (Tr. 69) G. R. L. then evaluated Smith's "B" listing criteria, which gauge the severity of his limitations. *See* 20 C.F.R. § 404.1520a(c)(3). G. R. L. found Smith has no restrictions of his daily activities; "moderate" difficulties in maintaining social functioning; "moderate" difficulties in maintaining concentration, persistence, or pace; and no evidence of decompensation. (Tr. 70) G. R. L. further opined that the medical evidence did not establish the presence of the "C" criteria, which are an alternative gauge of the extent of his mental impairment. (Tr. 70) G. R. L. then considered Smith's residual functional capacity (RFC). (Tr. 71) G. R. L. found that Smith's ability to understand and remember detailed instructions is markedly limited. (Tr. 71) His ability to carry out detailed instructions and ability to interact appropriately with the general public are markedly limited. (Tr. 72) His ability to work in coordination with or in proximity to others without being distracted by them is moderately limited. (Tr. 72) His ability to accept instructions and respond appropriately to criticism from supervisors is moderately limited. (Tr.

72) His ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes is moderately limited. (Tr. 72)

In September of 2014, Eugene Campbell, Ph.D., reviewed the medical record for the disability determination service on reconsideration and offered an opinion of Smith's mental impairment. (Tr. 84-85) Campbell affirmed the prior decision by G. R. L. (Tr. 85)

In December of 2014, Yanina Shames, N.P., completed a Mental Residual Functional Capacity Assessment. (Tr. 802) Shames opined that Smith is markedly limited in his ability to "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances," "work in coordination with or proximity to others without being distracted by them," "complete a normal work-day and work-week without interruptions [from] psychologically based symptoms," "accept instructions and respond appropriately to criticism from supervisors," "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "respond appropriately to changes in the work setting." (Tr. 802-803) Shames opined that Smith suffers from an "incurable, chronic, and debilitating disorder." (Tr. 804)

*Physical Impairment*

The record contains a "Report of Illness or Physical Disability" authored by Lincoln M. Lehman, D.C., in January of 2014. (Tr. 316) Lehman states that Smith sustained injuries in his neck and back from a motor vehicle accident in December of 2013. (Tr. 316) Lehman opines that Smith cannot work and it is too early to tell if, or when, he will recover. *Id.* He states that Smith is unable to lift over 5 pounds and cannot engage in prolonged driving or prolonged bending or twisting. *Id.*

In May of 2014, Janet G. Rodgers, M.D., reviewed the medical records for the disability determination service and offered an opinion of Smith's physical limitations. (Tr. 69) Rodgers opined that Smith's cervical dystonia, hand numbness, and tremors were non-severe. *Id.*

In September of 2014, Martha A. Goodrich, M.D., reviewed the medical records for the disability determination service on reconsideration and offered an opinion of Smith's physical

- 4 -

1  limitations. (Tr. 67) Goodrich agreed with the assessment previously provided by Rodgers.
2  *Id*.

3  In October of 2014, Chun W. Ho, M.D., completed a Physical Residual Functional
4  Capacity Assessment. (Tr. 680-82) Ho opined that Smith could stand for 2 hours or less in an
5  8-hour day. (Tr. 682) He could sit for 15-30 minutes at one time. *Id*. He could walk one block
6  before needing to stop. *Id*. He could occasionally lift and carry 10 pounds. *Id*. He could
7  occasionally reach, feel, finger, handle, grasp, kneel, stoop, or crouch. *Id*. He needs to lie down
8  during the day and alternate sitting and standing every hour. *Id*. He would miss work more
9  than 5 days per month due to his physical condition. *Id*.

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id*. If the ALJ concludes that the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the

1  claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the
next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. § 404.1520(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

The ALJ's Findings

At step one of the disability analysis, the ALJ found Smith "has not engaged in substantial gainful activity since November 1, 2013, the alleged onset date. . . ." (Tr. 23)

At step two, she found Smith "has the following severe impairments: (1) dysfunction of the knees bilaterally; (2) cervical dystonia and tremors; and (3) mental impairments variously diagnosed to include: personality, depressive, and anxiety disorders. . . ." (Tr. 23)

At step three, the ALJ found Smith's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 26)

The ALJ then analyzed Smith's residual functional capacity (RFC). She found as follows:

> The claimant had the residual functional capacity to perform sedentary work . . . except sitting is limited to one hour at a time. Additionally, the opportunity to change position, while remaining on task at the assigned workstation must be allowed at least hourly. Further, climbing ladders and stairs must be entirely precluded from assigned work duties while kneeling and crouching are limited to frequently. Finally, assigned work must be limited to simple tasks involving no more than occasional, brief, intermittent business related contact with the public.

(Tr. 28)

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

- 6 -

At step four, the ALJ found Smith is unable to perform any past relevant work. (Tr. 35) At step five, the ALJ found, based on the testimony of the vocational expert, that, considering his age, education, work experience, and residual functional capacity, Smith can work as an assembler, DOT # 725.684-018. (Tr. 36)

STANDARD OF REVIEW

To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

The findings of the ALJ are meant to be conclusive. The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. *Orn*, 495 F.3d at 635 (punctuation modified). "However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must

1 provide specific, cogent reasons for the disbelief." *Id*. "The ALJ must cite the reasons why the
2 claimant's testimony is unpersuasive." *Id*. If the ALJ does not find "affirmative evidence" of
3 malingering, "those reasons for rejecting the claimant's testimony must be clear and
4 convincing." *Id*.

Discussion

Smith argues first that the ALJ's residual functional capacity (RFC) determination failed to account for all of his impairments. At step three of the disability analysis, the ALJ analyzed Smith's "B" criteria and found, among other things, that he has moderate difficulties with regard to concentration, persistence or pace. (Tr. 27) At step four, she analyzed his RFC and found that he was "limited to simple tasks with occasional brief, intermittent business related contact with the public." (Tr. 28) Smith argues that the limitation to "simple tasks" does not adequately account for the ALJ's previous finding that he has moderate difficulties with regard to concentration, persistence or pace. (Doc. 17, pp. 10-13) The court does not agree.

Smith is correct when he says that an ALJ ordinarily cannot conclude that a limitation to "simple tasks" adequately captures the functional limitations a person might have who has moderate difficulties with regard to concentration, persistence or pace. The phrase "simple tasks" describes the intellectual level needed to perform the job. The phrase "concentration, persistence or pace" refers to the ability to stay on task. The two phrases are related but distinct. A person who has difficulty staying on task would have an easier time performing simple tasks than difficult ones, but it is not certain that even simple tasks would be within his ability. *See, e.g., Lara v. Colvin*, 2015 WL 1505817, at *10 (D. Ariz. 2015) ("The ALJ further failed to explain how a restriction to simple, unskilled, repetitive work accounted for the limitations in concentration, persistence, or pace supported by the medical evidence on which the ALJ relied."). The ALJ is not a medical expert. By herself, she does not have the expertise to determine precisely how, or to what extent, a claimant's difficulty with staying on task would affect his ability to work. *See, e.g., Cox v. Colvin*, 2014 WL 6882390, 5 (C.D.Cal. 2014)

- 8 -

("Absent expert medical assistance, the ALJ could not competently translate the medical evidence into a residual functional capacity assessment.").

Here, however, the medical record provides the necessary support for the ALJ's RFC determination. The non-examining consulting physicians considered this issue and found that, while Smith did have "moderate" "difficulties in maintaining concentration, persistence or pace" he was "not significantly limited" in his "ability to maintain attention and concentration for extended periods," his "ability to carry out very short and simple instructions," or his "ability to sustain an ordinary routine without special supervision." (Tr. 70, 72); (Tr. 84, 86); *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). So the ALJ's decision to limit Smith to "simple tasks" in the RFC is supported by the medical record. Her failure to explicitly accommodate Smith's difficulties with staying on task by including an extra limitation in his RFC was not error. *See, e.g., Stubbs-Danielson,* 539 F.3d at 1174 ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony.").

Smith argues in his reply that *Stubbs-Danielson* should be limited to those cases where the claimant has difficulties with *pace*, but nothing more. (Doc. 22, pp. 3-5) (*citing Stubbs-Danielson*, 539 F.3d at 1173-74) Here, he argues, there is evidence of difficulties with *concentration* and *persistence* as well as pace. Moreover, the medical record documents difficulties with his ability to interact appropriately with the general public, accept instructions and criticism, and get along with coworkers and peers. These extra mental difficulties, he argues, make *Stubbs-Danielson* distinguishable. The court does not agree with Smith's reading of that case.

In *Stubbs-Danielson*, the appellate court concluded as it did, not because the claimant had difficulties with pace and nothing more, but because the *medical record* indicated that the claimant could perform "simple tasks" in spite of her difficulties with pace. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Here, the *medical record* supports the ALJ's RFC determination. Accordingly, there is no error.

1  Smith further argues that the ALJ improperly failed to account for his tremors in her evaluation of his residual functional capacity (RFC). The ALJ found at step two that Smith's tremors were a "severe" impairment. (Tr. 23) Smith notes that a "severe" impairment is one which "has more than a minimal effect upon an individual's ability to work." (Doc. 17, p. 13) He therefore reasons that his tremors *must* have an effect on his RFC, and the ALJ's failure to include a manipulative limitation in his RFC was error. *Id*. Smith states succinctly: "It is impossible for an impairment to be severe, yet cause no work-related limitations in the RFC." (Doc. 22, p. 5) The court does not agree.

This particular argument was raised in *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). In that case, the court held that there is no authority requiring that every "severe impairment" found at step two "must correspond to limitations on a claimant's ability to perform basic work activities." *Id*. at 1229. Accordingly, the court must reject Smith's argument.

The ALJ explained why she did not include a functional limitation in the RFC for Smith's hand tremors. His symptoms seemed to increase when he spoke about having this disability, his neurologist was concerned that Smith had "clear underlying secondary gain to his allegations," and the same neurologist found it "odd that he outright dismisses the most effective treatment for this condition." (Tr. 29-30) (punctuation modified) The ALJ's decision to omit a hand tremor limitation in the RFC is supported by substantial evidence.

Finally, Smith argues that "the ALJ abused discretion by forming an RFC based on VE [Vocational Expert] testimony, rather than medical evidence." (Doc. 17, p. 14) It appears that Smith is arguing that the ALJ's conduct at the hearing indicated improper bias.

ALJs are presumed to be unbiased, but this presumption can be overcome if the claimant shows "the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment." *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) (punctuation modified). The claimant must prove "actual bias." *Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003); *see also* 20 C.F.R. § 404.940. The "mere appearance of impropriety" is insufficient. *Id*.

In this case, Smith argues that the behavior of the ALJ at the disability hearing indicates improper bias. At that hearing, the ALJ raised certain hypotheticals to the vocational expert and asked if such a person would be disabled. The ALJ asked about a person with Smith's age and vocational and educational background, who could sit for 30 minutes at one time, lift up to 10 pounds, and was limited to "frequent" hand manipulation. (Tr. 59-61) The vocational expert explained that such a person could not work because sitting for only 30 minutes was too limiting. *Id*. When the ALJ asked if that was the only barrier to work, the vocational expert further explained that the limitation to "frequent" hand manipulation was also disqualifying. *Id*. The vocational expert testified that, to be able to work, the hypothetical claimant must be able to sit for at least one hour at a time and use his upper extremities on a "continuous" basis. *Id*. Such a person could work as an assembler, DOT # 725.684-018. (Tr. 61)

Later, when she calculated Smith's RFC, the ALJ found that he could sit for one hour at a time and he had no restrictions in his hand manipulation. (Tr. 28). She then found, relying on the testimony of the vocational expert, that Smith could work as an assembler. (Tr. 35-36)

Smith argues that the ALJ's behavior at the hearing was improper. (Doc. 17, p. 16) Rather than simply asking the vocational expert about certain hypotheticals, she engaged in "wheeling and dealing" to uncover what RFC would justify a finding of "not disabled." *Id*. This behavior, he maintains, shows that the ALJ acted not as an impartial-factfinder, but as a prosecutor or adversary. *Id*.

The court agrees with Smith that the ALJ's questions at the hearing indicate that she was trying to find the precise line between those limitations that were disabling and those that were not. But the court does not conclude that this line of inquiry evinces improper bias.

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-111, 120 S. Ct. 2080, 2085 (2000). "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." *Id*. Here, the ALJ attempted to find what RFC was compatible with work and what RFC indicated disability. The court finds that this line of inquiry was reasonable and relevant. The ALJ's attempt to find this information is not evidence that the ALJ intended to deny the claim all along and manufactured

- 11 -

an RFC regardless of the medical evidence.  The court notes that the RFC section of the ALJ's decision runs in excess of six single-spaced pages and discusses in detail all of Smith's alleged impairments and the medical records corresponding to each.  (Tr. 28-35)  "[I]n the context of the whole case," the ALJ's behavior was not "so extreme as to display clear inability to render fair judgment."  *See  Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001).  Accordingly,

　　　　IT IS ORDERED that the final decision of the Commissioner is affirmed.  The Clerk of the Court is directed to prepare a judgment and close this case.

　　　　DATED this 21st day of June, 2018.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge